UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BETH PEARCE, D.P.M.,

    *Plaintiff*,

vs.                                    CASE NO:

ORTHOPAEDIC ASSOCIATES OF
ST. AUGUSTINE, P.A., a Florida
corporation,

    *Defendant*.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**INJUNCTIVE RELIEF REQUESTED**

Plaintiff Beth Pearce, D.P.M. sues Defendant Orthopaedic Associates of St. Augustine, P.A. ("OASA") and alleges:

**I.    Nature of action**

1.    Plaintiff's gender discrimination and retaliation claims arise from her employment with Defendant OASA. Defendant OASA's conduct violates Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act ("FCRA").

II. **The parties**

2. Dr. Pearce specializes in corrective foot surgery, lower extremity injuries, pain intervention, and wound care. She is board certified by the American Board of Podiatric Orthopedics and Primary Podiatric Medicine. She has been appointed by the governor to serve on the State of Florida Board of Podiatric Medicine on three occasions.

3. OASA is a medical practice composed of seven physicians and more than fifty (50) employees. Plaintiff is the only female physician and the only non-shareholder. The six male physicians are all shareholders.

III. **Compliance with administrative prerequisites**

4. Plaintiff has dual-filed a charge of gender discrimination and retaliation with the Equal Opportunity Commission and with the Florida Commission on Human Relations, a copy is attached as Exhibit A. She will supplement her Complaint when those agencies have completed processing her claims under Title VII and FCRA.

IV. **Statement of facts**

5. Dr. Pearce joined OASA on October 4, 2004.

6. Dr. Pearce was told at the outset that OASA would consider her for shareholder status at the end of her second employment year.

7. In less than two years, however, Dr. Volk—one of the founders of OASA—told Dr. Pearce that she was not eligible for shareholder status because she

did not generate enough revenue and because OASA's bylaws supposedly had been amended to allow only orthopaedic surgeons to become shareholders.

8. Consistent with Dr. Volk's explanation, when OASA hired another female physician, Dr. Andrea Trescot, OASA told Dr. Trescot at the outset that she could never be a shareholder because she was not an orthopaedic surgeon.

9. In 2012, Casey McClone (male) joined the practice. Dr. McClone is board certified in Family Medicine and Sports Medicine.

10. Dr. McClone is not an orthopaedic surgeon, or a surgeon of any type, and has no privileges at any hospitals or surgery centers.

11. Dr. Pearce, in contrast, is authorized to perform leg surgeries (below the knee), has hospital privileges, and can perform pain intervention procedures.

12. Nevertheless, Dr. McClone was told at the outset that he would be eligible for shareholder status and is now an OASA shareholder.

13. In early 2013, Dr. Pearce again asked about becoming a shareholder but was told that she did not generate enough revenue and, again, that only orthopaedic surgeons were eligible to become shareholders.

14. Similarly, in 2014, when OASA hired Dr. Josh Henry—a board certified pain management doctor but not an orthopaedic surgeon—OASA told him that he "could and should" be made a shareholder in OASA after three years of employment.

15. Comparing the histories of Drs. Pearce and Trescot on the one hand, and Drs. McClone and Henry on the other, demonstrates that OASA applies one set of rules for its female physicians and another for those that are male.

16. Further to this point, in July 2017, when Dr. Volk admitted to Dr. Pearce that OASA had made Dr. McClone a shareholder even though he is not an orthopaedic surgeon, Dr. Volk said the basis for OASA's decision was that Dr. McClone "makes a lot more money than you." This was inaccurate.

17. Historically, Dr. Pearce and Dr. McClone's revenue generation had been similar.

18. In 2016, for example, their revenue generation varied by only about $5,000, based on each physician's revenue of nearly $900,000.00.

19. In other years, Dr. Pearce generated more than Dr. McClone.

20. In this same conversation, Dr. Volk told Dr. Pearce that the partners would reconsider Dr. Pearce's eligibility for partnership at their next shareholders' meeting.

21. On October 27, 2017, Dr. Volk called Dr. Pearce and told her that the partners had again decided against making her a shareholder.

22. When Dr. Pearce asked why the partners had not allowed her to become a shareholder while allowing Dr. McClone, Dr. Volk this time stated, "We didn't want to do it. It's not a financial decision."

23. On June 19, 2019, Dr. Pearce met with Dr. Volk. Dr. Pearce stated that she had been unfairly denied partnership by OASA due to her gender and requested the partners consider making her a shareholder.

24. Dr. Volk responded that he would address Dr. Pearce's request with the other shareholders at the next day's meeting, would have OASA's Chief Operating Officer Thom Pulzone "run the numbers" before the meeting, and would respond to her on Friday, June 21, 2019.

25. Dr. Pearce was later told that the shareholders did not discuss her request at the June 20, 2019 meeting and Thom Pulzone did not "run the numbers" beforehand.

26. After the June 20, 2019 meeting, Dr. Pearce was ignored and otherwise treated in a cold manner by the other shareholders. This was in retaliation for Dr. Pearce asking that she be treated equally. By way of example, Dr. Kurtis Hort uncharacteristically ignored Dr. Pearce for multiple days after the meeting. Dr. Pearce reported this negative treatment to Dr. Volk on June 26, 2019.

27. On July 16, 2019, Dr. Volk relayed to Dr. Pearce that the partners unanimously voted against making her a shareholder.

28. Dr. Volk explained that OASA's bylaws provide that shareholders must be medical doctors (M.D.) or doctors of osteopathy (D.O.). In other words, Dr.

Pearce—the only non-M.D., non-D.O., non-male doctor at OASA—could never become a shareholder.

29. Dr. Volk's stated excuse was that the partners did not want Dr. Pearce to be a shareholder because it would "change the dynamic" of OASA.

30. The false and shifting reasons provided to Dr. Pearce for OASA's refusal to make her a shareholder after fourteen years of service demonstrate that OASA's refusal to make her a shareholder is and has been motivated by her gender and/or by retaliation against her for complaining of gender discrimination.

31. In addition, Dr. Pearce has been discriminated against on the basis of her gender with respect to the terms of her compensation throughout her tenure with OASA. The practice has continuously altered the terms of her compensation to her disadvantage and has done so in less than a forthright manner. For example:

   a. OASA has been discriminatory in the manner of Dr. Pearce's patient referrals;

   b. OASA has been discriminatory in the costs attributed to Dr. Pearce's practice;

   c. OASA has been discriminatory in the manner of scheduling Dr. Pearce's surgeries at the surgery center; and

   d. OASA has been discriminatory in the manner of marketing and social opportunities.

32. OASA has not afforded Dr. Pearce equal respect and dignity as compared to her male peers. OASA shareholders have made sexist remarks, even suggesting that Dr. Pearce should have her husband (who is not a physician or a member of OASA) attend future OASA meetings instead of her because "men tend to be more blunt."

33. In addition to being denied shareholder status in the practice, Dr. Pearce was also denied an equal share in a surgery center once owned by OASA's shareholders.

34. The male shareholders who had an interest in the surgery center each owned an equal share in the surgery center.

35. Dr. Pearce was given a paltry 2% ownership stake in the surgery center.

36. Dr. Pearce was subsequently forced by OASA to sell her ownership interest in the surgery center to make room for Dr. Stark (male) to acquire an interest in the surgery center equal to the other shareholders.

37. In November 2017, the surgery center was sold to Flagler Hospital, generating millions of dollars for each of its shareholders. On account of her gender, however, Dr. Pearce was excluded from this benefit conferred on the shareholders.

38. Had Dr. Pearce been treated equally rather than being discriminated against because of her gender, or retaliated against for opposing OASA's illegal gender

discrimination, she would have been an equal shareholder in the surgery center, and she would have received an equal share of the sale proceeds.

39. Accordingly, OASA's discriminatory conduct caused Dr. Pearce to suffer millions of dollars in damages related to the sale of the surgery center.

40. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained a loss of earnings, diminished earning capacity, loss of fringe benefits, and she has suffered mental anguish, emotional distress, humiliation and embarrassment, and injury to her professional reputation. She has also retained undersigned counsel to represent her in this action and is obligated to pay them a reasonable attorneys' fee and to reimburse them for their out of pocket costs and other expenses.

## COUNT I
### (Title VII, Gender Discrimination)

41. Plaintiff re-alleges paragraphs 1 to 40.

42. Defendant has discriminated against Plaintiff with respect to her compensation, terms, conditions, or privileges of employment, and/or has limited, segregated, or classified Plaintiff in a way which has deprived, or tended to deprive her of employment opportunities, or otherwise has adversely affected her status as an employee, because of her gender (female), in violation of 42 U.S.C. § 2000e-2(a)(1).

## COUNT II
### (FCRA, Gender Discrimination)

43. Plaintiff re-alleges paragraphs 1 to 40.

44. Defendant has discriminated against Plaintiff with respect to her compensation, terms conditions, or privileges of employment and/or has limited, segregated, or classified Plaintiff in a way which has deprived, or tended to deprive her of employment opportunities, or has otherwise adversely affected her status as an employee because of her gender, in violation of § 760.10(1)(a), Florida Statutes.

## COUNT III
### (Title VII, Retaliation)

45. Plaintiff re-alleges paragraphs 1 to 40, especially paragraphs 26, 30, and 38.

46. To the extent the adverse employment actions identified in the preceding paragraphs were motivated by intent to retaliate due to Plaintiff's protected activity, Defendant has engaged in unlawful retaliation in violation of Title VII.

## COUNT IV
### (FCRA, Retaliation)

47. Plaintiff re-alleges paragraphs 1 to 40, especially paragraphs 26, 30, and 38.

48. To the extent the adverse employment actions identified in the preceding paragraphs were motivated by intent to retaliate due to Plaintiff's protected activity, Defendant has engaged in unlawful retaliation in violation of the FCRA.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands the following relief:

a. Past lost earnings, wages, salary, and employment benefits, not necessarily limited to lost partnership distributions, lost deferred income, lost capital gains, lost proceeds from the sale of the surgery center, lost opportunities to invest in other business ventures because she was not a shareholder, and all other direct and indirect compensation or remuneration she has lost (hereafter collectively referred to as **"benefits"**), by virtue of Defendant's illegal conduct in the past (all of the foregoing hereinafter collectively referred to as **"back pay"**);

b. Retroactive instatement to shareholder status on a basis equal with her male colleagues, dating back to the most distant date allowable by law, with all lost **"benefits"** (hereafter collectively referred to as **"retroactive instatement"**).

c. In the event **"retroactive instatement"** is not feasible, then in addition to **"back pay,"** Plaintiff also demands all **"benefits"** she will lose in the future by virtue of Defendant's illegal conduct (hereinafter collectively referred to as **"front pay"**);

d. Interest on the amount of her **"back pay"** as of the date of judgment;

  e. Compensatory damages including, but not limited to, compensation for her pecuniary losses, emotional pain, humiliation, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, and any other non-pecuniary losses or intangible injuries allowable by law or equity.

  f. Punitive damages as allowed by law;

  g. Attorneys' fees and expenses, including expert witness fees as allowed by law, all recoverable statutory costs, and all litigation expenses not otherwise expressly allowed by statute;

  h. All other legal or equitable relief to which she is entitled to as a matter of law or equity; and,

  i. Trial by jury of all issues so triable.

Dated: July 26, 2019

    BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
    Professional Association

    By:  s/Michael E. Lockamy
      Michael E. Lockamy
      Florida Bar No. 69626
      mel@bedellfirm.com
      Michael E. Halkitis, Jr.
      Florida Bar No. 30342
      meh@bedellfirm.com
      The Bedell Building
      101 East Adams Street

      Jacksonville, Florida 32202
      Telephone: (904) 353-0211
      Facsimile: (904) 353-9307

– and –

FORTUNE LAW OFFICES

      Scott Thomas Fortune (co-trial counsel for Plaintiff)
      Florida Bar No. 342815
      SFortune@FortuneLegal.com
      1807 3rd Street North
      Jacksonville Beach, Florida 32250
      Telephone: (904) 246-2125
      Facsimile: (904) 246-1551

Attorneys for Plaintiff